IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| HOLLIS GREENLAW (01) | § | Case No. 4:21-cr-289-O |
| BENJAMIN WISSINK (02) | § | |
| CARA OBERT (03) | § | |
| JEFFREY JESTER (04) | § | |

**ORDER**

Before the Court are Defendants' Motion to Dismiss for Violations of Defendants Fourth, Fifth, and Sixth Amendment Rights (ECF No. 129), filed December 13, 2021; Government's Response (ECF No. 163), filed December 20, 2021; and Defendants' Reply (ECF No. 187), filed December 24, 2021. For the reasons that follow, the Court finds this Motion should be, and is, **DENIED**.

**I.    BACKGROUND**

"From April 15, 2015, through at least February 12, 2016, the SEC, the FBI and the USAO/NDTX (hereafter "the Government") were conducting parallel investigations of UDF's accounting practices." Mot. 6, ECF No. 129. "During the parallel investigation and prior to the execution of the search warrant, UDF had voluntarily provided over 800,000 non-privileged documents to the government with respect to the parallel investigation." *Id.* at 7. "On February 18, 2016, the Government executed a search warrant of UDF's executive headquarters." *Id.* at 8. "Ultimately, as a result of the search, the government seized all of UDF's servers, all employee laptops, all hard drives and 7 employee cell phones—all told, more than 40 terabytes of electronic data. Moreover, the government seized over 750 boxes of physical documents which were hauled

1

away in multiple box trucks." *Id*. Defendants were indicted October 15, 2021. *See* Indictment, ECF No. 1.

## II. ANALYSIS

The Defendants seek dismissal of the indictment, stating "the government's deliberate seizure and viewing of privileged communications between the UDF Executives and their attorneys regarding their defense of this case," constitute a violation of the Defendants "Fourth, Fifth and Sixth Amendment rights guaranteed by the United States Constitution." Mot. 5, ECF No. 129. In support of their dismissal request, Defendants argue this led to the prosecution team being exposed to the Defendants' litigation strategies and private attorney communications. *Id.* at 21. As a result, Defendants argue the Government "gained a completive advantage by altering its strategy and focus based on what it found." The Defendants allege the breaches occurred during a parallel SEC/DOJ investigation, preindictment. *Id.* at 19. In their Reply, Defendants state "[w]hile the misconduct began pre-indictment, the government's action had a continuing effect post-indictment." Reply 9, ECF No. 187.

As a preliminary matter, the Court agrees with the Government that "the defendants have waived their Fourth and Fifth Amendment arguments by failing to brief them." (citing *Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, No. 7:09-cv-29-O, 2011 WL 13128126, at *3 (N.D. Tex. May 25, 2011). While, in their Reply, Defendants state "The UDF Executives argued that the government's conduct violated all three Amendments in the opening brief. Legal authority was cited that supports dismissal." Reply n. 9, ECF No. 187. This is insufficient. "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n. 10 (S.D. Tex. 2003) (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002)). "By

2

analogy, failure to brief an argument in the district court waives that argument in that court." *Id*. Defendants only mention of the Fourth and Fifth amendment are mere conclusions that these rights were violated, not arguments or authorities. *See* Mot. ECF No. 129. Therefore, the Court finds these arguments are waived. The Court now moves to the Government's substantive arguments.

### a. The Sixth Amendment Did Not Attach Until Defendants Were Indicted

The Government first argues "[b]ecause the defendants' Sixth Amendment rights had not attached at the time of the allegedly improper intrusions, the Sixth Amendment cannot form the basis of any relief sought." Resp. 6, ECF No. 163. In support of this, the Government states "the defendants' Sixth Amendment right to counsel did not attach until they were indicted in October 2021." *Id*. "The Sixth Amendment right . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (internal quotations omitted); *see also S.E.C. v. Current Fin. Servs.*, 62 F. Supp. 2d 66, 67 (D.D.C. 1999) (The Court held "the Sixth Amendment provides defendants the right to counsel only in criminal, not civil, proceedings.").

Defendants argue "[t]he Sixth Amendment's right to counsel attaches as soon as the 'government's role shifts from investigation to accusation.'" Mot. 24, ECF No 129 (quoting *Moran v. Burbine*, 475 U.S. 412, 428–30 (1986)); *see also Kirby v. Illinois*, 406 U.S. 682, 689 (1972). The Defendants reliance on *Moran* is erroneous. In the very next paragraph, the Court states:

> in *Maine v. Moulton,* decided this Term, the Court again confirmed that looking to the initiation of adversary judicial proceedings, far from being mere formalism, is fundamental to the proper application of the Sixth Amendment right to counsel. There, we considered the constitutional implications of a surreptitious investigation that yielded evidence pertaining to two crimes. For one, the defendant had been indicted; for the other, he had not. Concerning the former, the Court reaffirmed that

3

> after the first charging proceeding the government may not deliberately elicit incriminating statements from an accused out of the presence of counsel. See also *Massiah v. United States,* 377 U.S. 201 (1964). The Court made clear, however, that the evidence concerning the crime for which the defendant had not been indicted—evidence obtained in precisely the same manner from the identical suspect—would be admissible at a trial limited to those charges. *Maine v. Moulton,* 474 U.S., at 180, and n. 16. The clear implication of the holding, and one that confirms the teaching of *Gouveia,* is that the Sixth Amendment right to counsel does not attach until after the initiation of formal charges.

*Moran*, 475 U.S. at 431.

Defendants further, "[w]hen the government's pre-indictment misconduct continues in the same manner post-indictment, a defendant's Sixth Amendment rights are at play." Reply 9, ECF No. 187 (citing *United States v. Stein*, 541 F.3d 130, 153 (2d Cir. 2008) ("When the government acts prior to indictment so as to impair the suspect's relationship with counsel post-indictment, the pre-indictment actions ripen into cognizable Sixth Amendment deprivations upon indictment.")). The Court remains unpersuaded. The Second Circuit in *Stein* was analyzing the "government's role in KPMG's action in cutting off payment of legal fees *for those who were indicted* as distinct from the limitation on payment of legal fees during the investigation stage." 541 F.3d at 152–53 (emphasis original) (internal quotation omitted). Therefore, the facts at hand are much more analogous to those discussed above in *Moran*. Thus, the Court finds that any alleged violations that occurred prior to the indictment occurred prior to the attachment of the Defendant's Sixth Amendment rights.

### b. The Defendants Do Not Have Standing

Even if the right had attached, the Government asserts Defendants lack standing to claim privilege because "[n]one of the individual defendants have ever asserted a personal privilege, and the motion does not discuss any privilege that applies to any of them in their individual capacities. Rather, the privilege at issue in the motion appears to be held by 'UDF,'" therefore, "[t]he

4

defendants have not offered any authoritative explanation as to why they should be entitled to personal relief for an alleged violation of UDF's privilege." Resp. 6–7, ECF No. 163. In support of this argument, the Government states "[i]t is well settled that the rights conferred by the Sixth Amendment are personal in nature and cannot be asserted on behalf of others." *Id.* at 7 (citing *United States v. Fortna*, 796 F.2d 724, 732 (5th Cir. 1986)). The Government further argues "federal case law clearly holds that a corporation's attorney-client privilege belongs to the corporation, not to the corporation's officers and directors or shareholders." *Id.* (quoting *United States v. Satary*, 504 F. Supp. 3d 544, 554 (E.D. La. 2020)); *see also Commodity Future Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985); *Upjohn Co. v. United States*, 449 U.S. 383 (1981); *Fortna*, 796 F.2d at 733 ("The Supreme Court held that the supervisory power of the federal courts does not authorize a court 'to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court.'") (quoting *United States v. Payner*, 447 U.S. 727 (1980)).

Defendants counter the standing argument, stating "'[a] communication is protected by the attorney-client privilege, and we hold today is protected from government intrusion under the Sixth Amendment if it is intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential.'" Reply 7, ECF No. 187 (quoting *United States v. Melvin*, 650 F.2d 641, 646 (5th Cir. 1981)). "The communications, as non-public communications with a lawyer about matters for which they were receiving defensive legal advice, were reasonably expected, and understood by counsel and the UDF attorneys to be confidential." *Id.* Defendants seem to miss the mark with this argument. If the statements were made on behalf of UDF, not the individuals, UDF owns the privilege. Even if the statements were made with the expectation of confidentiality, they were made on behalf of UDF during through UDF executive.

5

Defendants finally argue "[t]his analysis aligns with Circuit precedent that finds individuals have Fourth Amendment standing in asserting privacy over corporate documents. Reply n. 11, ECF No. 187 (citing *United States v. Britt*, 508 F.2d 1052, 1055 (5th Cir. 1975) ("[U]nder certain circumstances a corporate officer or employee can be a person aggrieved by a search of corporate premises and a seizure of corporate property."); *Williams v. Kunze*, 806 F.2d 594, 599 (5th Cir. 1986) (explaining a "shareholder, officer or employee" has standing if they "can demonstrate a legitimate and reasonable expectation of privacy in the records seized"). Regardless, Defendants failed to argue they had a "reasonable expectation of privacy" in the records. In *Britt*, the Fifth Circuit held "[w]hen a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment." 508 F.2d at 1055. The same is true here. Therefore, the Defendants have failed to show they have standing to assert privilege.

### c. The Defendants Fail to Show Prejudice

Next, the Government argues the Defendants motion failed to sufficiently allege prejudice from the alleged violation, which is necessary for dismissal. Resp. 8, ECF No. 163 (citing *United States v. Melvin*, 650 F.2d 641, 643 (5th Cir. 1981) ("[T]here is no per se rule requiring dismissal of the indictment as the sanction for the intrusion into the attorney-client relationship by government agents."). "In the absence of demonstrable prejudice, or a substantial threat of prejudice, dismissal of the indictment is plainly inappropriate, even if the violation was deliberate." *United States v. Laury*, 49 F.3d 145, 150 (5th Cir. 1995) (emphasis added)).

Defendants contend the harm comes from the Government gaining insight into their potential defense strategies. Mot. 6–7, ECF No. 129. "Each member of the current Prosecution Team, including every AUSA assigned to try this case, has had continuous access to Lead Agent

Edson," who defendants alleged had access to privileged material. *Id.* at 11. Further, "[i]n addition to AUSA Bunch, no less than seven (7) AUSA's from the NDTX have either remained on or cycled through the Prosecution Team. The Prosecution Team Agents, including Lead Prosecution Team Agent Edson, Forensic Accountants and Government Contractors have remained on the case from the execution of the search warrant to the present." *Id.* at 17. Therefore, "privileged material that goes to the heart of UDF's defense of the charges has now been passed to the prosecution team." *Id.* at 18.

> The Government states:
>
> No current member of the prosecution team from the U.S. Attorney's Office—AUSAs Tiffany Eggers, Errin Martin, Rachael Jones, or Elyse Lyons—has reviewed any of the original boxes of physical evidence at any time. *Id*. AUSAs Eggers, Martin, Jones, and Lyons were not involved in the case until late 2020 and early 2021. As such, none of them were involved in the review that the defendants complain of, nor were they given access to any of the segregated items.

Resp. 4, ECF No. 163. Further, the government argues the Defendants proffered theories of defense were already outlined in the previous SEC Matter, therefore, the Government is already intimately familiar. Lastly, to counter Defendants' argument that the Government altered its theory of prosecution after reviewing privileged materials, the Government states "During the allegedly improper evidence review sessions at issue here, the prosecution team never reviewed any potentially privileged document for substance and never learned any privileged information. *Id*. Because they never learned any privileged information, they did not use any privileged information to further their investigation or alter its course." *Id.* at 11–12.

> One example Defendants offers is an
>
> Attorney Draft of a letter UDF III intended to send to the Staff of the SEC regarding UDF III's portfolio of mortgage notes and loan loss reserves—precisely the issues relevant to defending the indictment. The draft, provided by the Prosecution Team in discovery, contains attorney notes and track changes that reveal the thoughts and

7

impressions of the attorneys in their defense of UDF's accounting practices which are front and center in the instant indictment.

Mot. 19, ECF No. 129. The Government addresses this letter in its Response, stating "the draft letter in question was cleared by UDF's counsel, Barrett Howell. He released it to the prosecution team!" Resp. 16, ECF No. 163.

The Court agrees that Defendants have failed to articulate how the alleged violation "actually harms each of them or how it impairs their individual ability to be effectively represented by counsel in this case." Resp. 9, ECF No. 163. While Defendants allegations are, at a minimum, troubling, they do not satisfy the necessary standard for dismissal.[1] *See* Reply 2–3, ECF No. 187. The Government is no longer in possession of any privileged documents, and therefore cannot offer them into trial. Resp. 9, ECF No. 163 (citing U*nited States v. Davis*, 226 F.3d 346, 353 (5th Cir. 2000) (finding defendant "failed to put forward the slightest showing of prejudice" where the government "did not offer any privileged documents into evidence at trial"). Further, the Defendants failed to point specifically to any theory of defense not already within the Government's knowledge from prior proceedings or the Defendants own consensual disclosures. *See* Mot. 8, ECF No 129; *see also* Resp. 10–11, ECF No. 163 (discussing various power point presentation). Therefore, there is no showing of actual prejudice.

### d. The Defendants Fail to Show Suppression is Necessary

Lastly, the Court agrees that even if there is a showing of prejudice, dismissal is not appropriate. Resp. 12, ECF No. 163. "[T]here is no per se rule requiring dismissal of the indictment as the sanction for the intrusion into the attorney-client relationship by government agents." *United*

---

[1] While these allegations do not justify dismissal, the Court will open a miscellaneous case to investigate any ethical lapses that may have occurred.

*States v. Melvin*, 650 F.2d 641, 643 (5th Cir. 1981). Rather, "[i]f a Sixth Amendment violation occurs, generally the remedy is to suppress the evidence, not to dismiss the indictment." *United States v. Laury*, 49 F.3d 145, 150 (5th Cir. 1995); *United States v. Sander*, 615 F.2d 215, 219 (5th Cir. 1980) ("Where there is an intrusion on the attorney-client relationship the remedy for such a violation is not dismissal, but the suppression of any evidence so obtained."). Defendants fail to request any suppression, only dismissal. Dismissal is clearly not appropriate here. Regardless, as discussed above, the current prosecution team is not in possession of any privileged material. And any ethical violation will be investigated in the miscellaneous case, so that if they occurred they will not go unaddressed. Therefore, suppression is unnecessary.

### III. CONCLUSION

For the reasons stated above, the Court finds the Defendants fail to show they are entitled to dismissal. Therefore, the Motion is **DENIED**.

**SO ORDERED** on this **1st day of January, 2022.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**